# Nescopeck Creek Bridge.

1. The Act of February 24th 1845 (Roads, Bridges, &c., in Luzerne) requiring three viewers only, does not affect the 39th sect. of the General Road Law of June 13th 1836, requiring six persons to inspect bridges.

2. Inspectors reported deficiencies in the bridge which might be remedied at a cost which they specified, and recommended that the contract price be paid after deducting the cost named. *Held*, that this was a report against the completion of the bridge according to contract.

3. The Quarter Sessions directed the amount for deficiencies to be deducted and the balance to be paid with interest from the filing of the report. *Held* to be correct:

March 16th 1870. Before THOMPSON, C. J., AGNEW and SHARSWOOD, JJ. READ, J., at Nisi Prius.

Certiorari to the Court of Quarter Sessions of *Luzerne county :* No. 35, to January Term 1870.

By an act passed April 5th 1867, the supervisors of Nescopeck township, Luzerne county, were required to erect stone abutments for a bridge across Nescopeck creek, and to collect a tax for payment of the work. By the same act, the Commissioners of Luzerne county were directed to construct a good superstructure for the bridge, the work to be performed under the control and direction of the commissioners, in the manner provided by law for the erection of county bridges.

The commissioners accordingly contracted for the superstructure of the bridge with John Bittenbender and David Schellhammer for $2469, in accordance with plans, specifications, &c.

On the 18th of December 1868, the contractors petitioned the Court of Quarter Sessions, representing that they had completed the superstructure according to their contract, and prayed the court " to appoint six fit persons to inspect said bridge or superstructure according to law, and make report," &c. The court, under the 39th section of the Act of June 13th 1836 (Purd. 877,

[Nescopeck Creek Bridge.]

pl. 61), appointed six men as prayed for, who reported that they found "that the superstructure of said bridge was not built in entire accordance with the contract and specifications, being deficient in some respects, and that deficiency can be remedied, and the superstructure made entirely stable and secure by putting in a set of iron chord-rods and some additional chord-bolts, which will cost about $112.60, as per estimate hereto attached; and we do further report that in building said superstructure, it became necessary for the contractors to build the same one hundred and twenty-six and a half feet long, instead of one hundred and twenty feet, as provided and contracted for, and that for this additional length of the superstructure the contractors are entitled to an additional compensation of about $112.60, and we are therefore of opinion, and do report that the contractors ought to receive the full consideration-money agreed to be paid in said contract between said contractors and said county commissioners of Luzerne county, for the building of said superstructure of the said bridge."

They accompanied their report with a detailed statement of the particular materials, and the labor which would be required to make the bridge "stable and secure," with the cost of each item in their estimate, the whole amounting to the sum stated in the report.

The commissioners filed exceptions to the report: amongst others, because the viewers did not state whether they approved the bridge or not, or whether the bridge was built according to the contract; because they made allowance for work not embraced in the contract, and because "the report is informal and illegal."

An act passed February 24th 1845 (Pamph. L. 52), provides, "That hereafter the number of road and bridge viewers appointed by the Court of Quarter Sessions of the counties of Butler, Allegheny, Luzerne, Lycoming and Clinton shall be three, one of whom shall be a surveyor, if deemed necessary, and every view and review shall be made by the whole number of persons so appointed, a majority of whom shall concur in their report in order to its confirmation by the court."

Two principal questions were raised and discussed in the court below: 1. Whether the viewers should have been appointed under the Act of 1836 or under the Act of 1845? 2. Whether the report of the viewers was a compliance with the order?

The opinion of the Court of Quarter Sessions was delivered by Judge Dana.—He referred to the General Road Law of 1836, and to a number of special Acts of Assembly, similar to the Act of 1845, above given. Amongst others, to an Act of February 11th 1854, relating to roads in Beaver county, &c., which was in the terms of the Act of 1845, with this addition: "The provisions of this section shall include viewers appointed to inspect bridges under the 39th section of the General Road Law of 1836." He

then said, "An examination of the mode of proceeding by the view and the action of the court, as directed in the Act of 1845, fortifies the conclusion that the road and bridge viewers therein. referred to, are those appointed either to review roads already laid, or to view the routes of contemplated roads, and the sites of intended bridges, and not for the purpose of inspecting and reporting upon completed bridges, with reference to the settlement of questions of compensation to the contractors for erecting the same."

The finding that the contractors were entitled to additional compensation for work not included in the contract was disapproved. The order of the court was :—

" After full consideration, we are of the opinion that justice and equity require that there be deducted from the contract sum of two thousand four hundred and sixty-nine dollars, the sum of one hundred and twelve dollars and sixty cents, and that the balance, being two thousand three hundred fifty-six dollars and forty cents, with interest, from the 22d January 1869, the date of filing the report, be paid by the county, agreeably to the terms of the contract.'"

The county commissioners removed the proceedings to the Supreme Court; there assigning for error the order of the court below.

*S. Jenkins*, for the commissioners, referred to the various Acts of Assembly, general and special, relating to roads, bridges, &c. As to the allowance of interest, he referred to Luzerne Co. *v.* Day, 11 Harris 141; Knight *v.* Reese, 2 Dall. 182; Dietterich *v.* Heft, 5 Barr 87.

*H. W. Palmer, D. C. Harrington* and *W. W. Ketcham*, contrà. —They referred to same Acts of Assembly, and as to interest, to Lehigh Co. *v.* Kleckner, 5 W. & S. 186.

The opinion of the court was delivered, May 5th 1870, by

THOMPSON, C. J.—We entirely concur in opinion with the learned judge below that there is nothing in the Act of the 24th of February 1845, relating to the number of viewers to be appointed by the Quarter Sessions of the counties of Butler, Allegheny, Luzerne, Lycoming and Clinton, which repeals the 39th section of the Act of 13th June 1836, which provides for the appointment by the courts of " six fit persons" to inspect bridges erected by the county, and report thereon according to the provisions of the 41st and other sections of that act. The 1st section of the Act of 1845 does alter and change the Act of 1836 as to the number of viewers to be appointed to view and lay out roads and view the sites of bridges as in the counties mentioned. This change obviously relates to viewers to lay out roads and fix bridge

[Nescopeck Creek Bridge.]

sites, because one of said viewers is required to be a surveyor, and there could be no occasion for this qualification in an inspector of a bridge. Indeed the Act of 1836 does not designate these appointees reviewers, but "fit persons;" (see section 39), and "*the persons appointed;*" (see the 41st and 42d sections). It carefully and purposely, no doubt, avoids giving the same designation to them as is given to original viewers. Their true designation would be "inspectors," for that is their designated duty. We cannot therefore regard a statute whose distinct purpose it is to reduce the number of viewers required to locate a road or fix the site of a bridge, as reducing the number of "fit persons" to inspect the work done on a bridge after it is claimed to be finished. These duties and functions are entirely dissimilar, as is their designation. The reduction of the number of the former leaves untouched the number of the latter. That the legislature so understood it in this way, we may refer to the Act February 11th 1854, relating to Beaver, Butler and Lawrence counties to show. It is in the very terms of the Act of 1845, about referred to, but with the addition that the "provisions of the section *shall include* viewers appointed to *inspect* bridges under the 39th section of the General Road Law of 1836." This would have been entirely unnecessary if without it the provisions of that act were supplied by reducing the number of road and bridge site viewers.

We also concur with the learned judge below that the report of the persons appointed to inspect the bridge was substantially a report against the completion of the work according to contract, and of the amount necessary to be deducted to bring it up to the requirements of the contract. Nothing could more clearly show the last matter than a report of the deficiencies, and an itemized report of the cost of the work and materials necessary to supply the deficiencies. These added together, as was done in the report, amounted to $112.60, and showed the deficiency quite as well as would the same sum in round numbers, if not better. The court were informed that the amount ($112.60) mentioned would bring up the bridge to the contract, and it directed that sum to be deducted, and the balance to be paid with interest from the date of filing the report. That was certainly all right. It would not be very equitable for the county to be relieved from accountability for interest, because she chose to suspend payment, and litigate without a cause, as the result of this case shows. No such rule as that exists in her favor.

Order of the Quarter Sessions is affirmed. with costs.